| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

SHARON KRUGER and JOSEPH KRUGER, §
§
       Plaintiffs, §
§
*versus* §   CIVIL ACTION NO. 1:24-CV-528
§
ALTOM TRANSPORT, INC. and SHAWN §
SCHROEDER, §
§
       Defendants. §

## MEMORANDUM AND ORDER

Pending before the court is Plaintiffs Sharon and Joseph Kruger's (collectively "Plaintiffs") Emergency Motion for Remand (#7), wherein Plaintiffs ask the court to remand this action to the 136th District Court of Jefferson County, Texas. Defendant Altom Transport, Inc. ("Altom") filed a Response (#10), and Plaintiffs filed a Reply (#12). Having considered the pending motion, the submissions of the parties, the record, and the applicable law, the court is of the opinion that the motion should be granted.

I.    <u>Background</u>

On October 20, 2023, Plaintiffs filed their Original Petition (#2) in the 136th Judicial District Court of Jefferson County, Texas, asserting claims for negligence. Plaintiffs' claims arise out of a multi-vehicle accident that occurred on April 19, 2023. According to Plaintiffs, Defendant Shawn Schroeder ("Schroeder") swerved in front of an Altom vehicle driven by Gerald Sampson ("Sampson") on Interstate Highway 10 ("IH-10") in Beaumont, Texas. Plaintiffs maintain that Sampson failed to react appropriately and lost control of his 18-wheeler tractor

trailer. Sampson hit Plaintiffs' vehicle, causing it to spin out and ultimately come to rest underneath the tractor trailer. Plaintiffs, Defendant Schroeder, and former Defendant Sampson are citizens of the State of Texas. Altom, however, is an Illinois corporation that maintains its principal place of business in the State of Illinois.

On November 25, 2024, Plaintiffs filed their First Amended Petition (#3), dismissing Sampson as a defendant and maintaining its claims against Altom and Schroeder. On December 26, 2024, more than a year after Plaintiffs filed their Original Petition, Altom removed the case to this court on the basis of diversity of citizenship, alleging that complete diversity exists among the real parties in interest and that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. On December 30, 2024, Plaintiffs filed an Emergency Motion to Remand the case to state court, contending that Defendant Altom's removal is untimely and improper.[1]

II.  Analysis

　　A.  Removal Jurisdiction

"Federal courts are courts of limited jurisdiction." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437 (2019) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *accord Gunn v. Minton*, 568 U.S. 251, 256 (2013); *Cleartrac, L.L.C. v. Lanrick Contractors, L.L.C.*, 53 F.4th 361, 364 (5th Cir. 2022); *Williams v. Homeland Ins. Co. of N.Y.*, 18 F.4th 806, 816 (5th Cir. 2021); *Gonzalez v. Limon*, 926 F.3d 186, 188 (5th Cir. 2019). "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377; *accord Gonzalez*, 926 F.3d at 188. The court

---

[1] The court will not address the parties' contentions regarding whether emergency circumstances are present, as the alleged emergency, a state court trial setting, has already lapsed.

"must presume that a suit lies outside [its] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Gonzalez*, 926 F.3d at 188 (quoting *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)); *accord Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010); *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 537 (5th Cir. 2017). In an action that has been removed to federal court, a district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 638 (2009); *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 231-32 (2007); *Atkins v. CB&I, L.L.C.*, 991 F.3d 667, 669 n.1 (5th Cir. 2021); *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 468 (5th Cir. 2020).

When considering a motion to remand, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Barker v. Hercules Offshore Inc.*, 713 F.3d 208, 212 (5th Cir. 2013) (quoting *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)); *accord Mitchell v. Bailey*, 982 F.3d 937, 940 (5th Cir. 2020); *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 611 (5th Cir. 2018); *see* 13E CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3602.1 (3d ed. 2013). "This extends not only to demonstrating a jurisdictional basis for removal, but also necessary compliance with the requirements of the removal statute." *Leboeuf v. Hatle*, No. 20-105, 2020 WL 1074952, at *1 (E.D. La. Mar. 6, 2020) (citing *Roth v. Kiewit Offshore Servs., Ltd.*, 625 F. Supp. 2d 376, 382 (S.D. Tex. 2008)); *accord Hernandez v. State Farm Lloyds*, No. DR-16-CV-164-AM/CW, 2017 WL 8131570, at *2 (W.D. Tex. Sept. 19, 2017); *Fort Worth & W. R.R. Co. v. Stevenson*, No. 3:15-CV-0906-B, 2015 WL 3867906, at *1 (N.D. Tex. June 22, 2015).

Non-jurisdictional defects in the removal procedure, such as removal by an in-state defendant, however, are waived unless raised in a motion to remand within thirty days after removal. 28 U.S.C. § 1447(c); *Schexnayder v. Entergy La., Inc.*, 394 F.3d 280, 284 (5th Cir. 2004); *Denman by Denman v. Snapper Div.*, 131 F.3d 546, 548 (5th Cir. 1998) (citing *In re Shell Oil Co.*, 932 F.2d 1518, 1523 (5th Cir. 1991)). "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441(a)); *see Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013); *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 395 (5th Cir. 2009).

"The removal statute ties the propriety of removal to the original jurisdiction of the federal district courts." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997); *see* 28 U.S.C. § 1441(a); *Grace Ranch, L.L.C. v. BP Am. Prod. Co.*, 989 F.3d 301, 307 (5th Cir. 2021); *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 295 (5th Cir. 2019); *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 183 (5th Cir. 2018). Because removal raises significant federalism concerns, the removal statutes are strictly and narrowly construed, with any uncertainty resolved against removal and in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Palmquist v. Hain Celestial Grp., Inc.*, 103 F.4th 294, 301 (5th Cir. 2024) (citing *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007)); *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 889 (5th Cir. 2024); *Valencia v. Allstate Tex. Lloyd's*, 976 F.3d 593, 595 (5th Cir. 2020); *Settlement Funding, L.L.C.*, 851 F.3d at 536. In short, any "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014) (quoting *Acuna v. Brown & Root*

*Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)); *accord Allen*, 907 F.3d at 183; *Afr. Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014).

    B.    <u>Diversity Jurisdiction</u>

Federal courts have subject matter jurisdiction and are authorized to entertain causes of action only where a question of federal law is involved or where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. §§ 1331, 1332; *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025); *Badgerow v. Walters*, 596 U.S. 1, 7 (2022); *Home Depot U. S. A., Inc.*, 587 U.S. at 437-38. In order to determine whether jurisdiction is present in a removed action, the claims set forth in the state court petition are considered as they existed at the time of removal.[2] *Palmquist*, 103 F.4th at 301 (citing *Cavallini v. State Farm Mut. Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)); *In re N&W Marine Towing, L.L.C.*, 90 F.4th 724, 731 (5th Cir. 2024) (quoting *Manguno*, 276 F.3d at 723); *Moss v. Princip*, 913 F.3d 508, 514 (5th Cir. 2019). In removed cases where, as here, there is no suggestion that a federal question is involved, subject matter jurisdiction exists only if there is complete diversity among the parties and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C. § 1332; *Royal Canin U. S. A., Inc.*, 604 U.S. at 26; *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005); *see Palmquist*, 103 F.4th at 308 (citing *McKee v. Kan. City S. Ry. Co.*, 358 F.3d 329, 336-37 (5th Cir. 2004)).

Complete diversity requires that no plaintiff be a citizen of the same state as any defendant. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005); *Priester v. Deutsche*

---

[2] As a result, the court will not consider Plaintiffs' Second Amended Complaint (#11) that was filed approximately eleven days after removal on January 20, 2025.

*Bank Nat'l Tr. Co.*, 832 F. App'x 240, 244 (5th Cir. 2020); *Moss*, 913 F.3d at 514. In cases removed from state court, "diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court." *Anaya v. Schlumberger Tech. Corp.*, No. 24-20170, 2024 WL 5003579, at *3 (5th Cir. Dec. 6, 2024) (quoting *Ashford v. Aeroframe Servs., L.L.C.*, 907 F.3d 385, 386-87 (5th Cir. 2018)); *see Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570-71 (2004); *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009). Furthermore, removal is appropriate only if none of the parties properly joined and served as a defendant is a citizen of the state in which the action was brought. *Pace*, 93 F.4th at 889 (quoting *Lincoln Prop. Co.*, 546 U.S. at 84); *Afr. Methodist Episcopal Church*, 756 F.3d at 793.

Here, it is undisputed that Plaintiffs have met the amount in controversy requirement for removal. Consequently, because Plaintiffs and Schroeder are both citizens of Texas, complete diversity does not exist. Altom, however, maintains that Plaintiffs dismissed their claims against Schroeder in their First Amended Petition (#3), despite naming Schroeder as a defendant. Plaintiffs respond by stating that they did not dismiss Schroeder, and that even if they did, Altom's removal is untimely because Altom removed the case more than a year after the commencement of the action. Consequently, the salient issue in this case is whether removal is time-barred under § 1446(c)(1).

   C. <u>Bad Faith Pursuant to 28 U.S.C. § 1446(c)(1)</u>

Section 1446(c)(1) prohibits removal based solely on diversity jurisdiction more than a year after the commencement of the action. 28 U.S.C. § 1446(c)(1). The same provision, however, creates an exception that permits a defendant to remove the case after the expiration of one year if the plaintiff acted in bad faith to prevent removal. *Id.* Bad faith arises when the plaintiff

attempts to "manipulate the statutory rules for determining federal removal jurisdiction, thereby preventing [a] defendant from exercising its rights." *Rantz v. Shield Coat, Inc.*, No. 17-3338, 2017 WL 3188415, at *5 (E.D. La. July 26, 2017)); *see DeForest v. WPX Energy Permian, L.L.C.*, No. 23-CV-00026-DC, 2024 WL 578574, at *2 (W.D. Tex. Feb. 13, 2024). Consequently, the court must evaluate whether Plaintiffs engaged in deliberate conduct to prevent removal. *See DeForest v. WPX Energy Permian, L.L.C.*, 23-CV-00026-DC-DF, 2024 WL 1080463, at *4 (W.D. Tex. Jan. 17, 2024) (citing *Hoyt*, 927 F.3d at 293); *Holman v. Fiesta Mart, L.L.C.*, No. 3:24-CV-0212-G, 2024 WL 2001574, at *1 (N.D. Tex. May 6, 2024); *Brueckner v. Hertz Corp.*, No. 4:20-cv-00334, 2023 WL 7130865, at *3 (S.D. Tex. Oct. 30, 2023).

A defendant seeking to escape § 1446(c)(1)'s general prohibition must satisfy a high burden of proof to be entitled to the application of the bad faith exception. *Holman*, 2024 WL 2001574, at *3. Many courts have noted that the burden on the defendant is heavy, as courts are "reluctant to find a party acted in bad faith without 'clear and convincing proof.'" *Manley v. Daimler AG*, No. 3:22-CV-2634-E, 2023 WL 4275004, at *4 (N.D. Tex. June 29, 2023) (citing *Boney v. Lowe's Home Ctrs, L.L.C.*, No. 3:19-CV-1211-S, 2019 WL 5579206, at *2 (N.D. Tex. Oct. 29, 2019)). Here, it is undisputed that Altom filed its Notice of Removal (#1) more than a year after Plaintiffs commenced the present action. Additionally, Plaintiffs raised the issue of timeliness under § 1446(c)(1) in their motion to remand. Therefore, for removal to be proper, Defendants must show by clear and convincing evidence that Plaintiffs acted intentionally to prevent removal.

Altom advances three contentions in support of its proposition that Plaintiffs acted in bad faith to prevent removal. Altom first asserts that Plaintiffs' alleged dismissal of their claims against Schroeder, which occurred 36 days after the one-year deadline passed, demonstrates that

Plaintiffs joined Schroeder to prevent removal. Alternatively, Altom maintains that Plaintiffs' bad faith is evinced by Schroeder being improperly joined in their First Amended Petition. Finally, Altom highlights certain litigation conduct by Plaintiffs to demonstrate that Plaintiffs never intended to pursue meaningfully any action against Schroeder. Hence, Altom contends that the bad faith exception to § 1446(c)(1) should apply.

        1.     <u>Dismissal of Schroeder</u>

Plaintiffs did not dismiss Schroeder. On May 16, 2024, Plaintiffs filed a Motion for Default Judgment in state court against Schroeder, which was granted as to liability on May 22, 2024. On November 25, 2024, Plaintiffs filed their First Amended Petition (#3). Plaintiffs maintain that they amended their Petition to dismiss Sampson, Altom's employee, for strategic discovery-related reasons. In their First Amended Petition, Plaintiffs removed Sampson's name from the caption of the pleading and retained their allegations against Sampson for purposes of vicarious liability. Plaintiffs, however, also modified their pleadings with respect to Schroeder. Seemingly relying upon the state court's grant of default judgment on the issue of liability, Plaintiffs removed the specific allegations against Schroeder contained in their Original Petition. Plaintiffs instead opted to include only a bare bones statement that the automobile incident was caused by the negligence of the Defendants, a term that was defined to include Schroeder.

Plaintiffs' decision to condense, considerably, its allegations against Schroeder is unusual, given that Plaintiffs had already drafted and submitted such allegations in their prior pleading. Nevertheless, Plaintiffs' First Amended Petition does not dismiss Schroeder or demonstrate bad

faith. Plaintiffs' decision appears to arise from Texas's fair notice pleading standard.[3] Under a fair notice standard, a pleading is sufficient if it provides the opposing party with fair and adequate notice of the facts upon which the pleader bases its claims to enable the opposing party to prepare a defense or response. *Life v. Gino Morena Enters.*, No. 08-23-00055-CV, 2023 WL 4557747, at *3 (Tex. App.—El Paso July 17, 2023, pet. denied); *City of Madisonville v. Hernandez*, No. 10-22-00151-CV, 2022 WL 17489755, at *5 (Tex. App.—Waco Dec. 7, 2022, pet. denied). Here, Plaintiffs' First Amended Petition sets forth the facts underlying Plaintiffs' negligence cause of action. Plaintiffs explain that Sampson swerved in an attempt to avoid another vehicle that was also trying to avoid an accident. The First Amended Petition then states that Defendants' negligence, which includes Schroeder, caused the incident at issue. Therefore, the First Amended Petition satisfies Texas's fair notice pleading standard.

In amending the Petition to dismiss Sampson, Plaintiffs seemingly did not think it was necessary to reiterate the factually detailed allegations against Schroeder because they had already obtained a default judgment against him. This does not, however, indicate that Plaintiffs dismissed Schroeder. Plaintiffs still name Schroeder as a Defendant and assert, albeit minimally, a negligence cause of action against him under Texas law. Additionally, the court notes that it would not make sense for Plaintiffs to dismiss Schroeder, in view of the fact that they had already obtained a default judgment against him as to liability but their damages remained to be

---

[3] The court notes that it is not substantively applying the fair notice standard for purposes of determining the adequacy of Plaintiffs' First Amended Petition. Rather, the court invokes the fair notice pleading standard only as it relates to Plaintiffs' conduct and sheds light on the court's conclusion that Plaintiffs did not dismiss Schroeder.

determined. Hence, because Plaintiffs did not dismiss Schroeder, Altom's contention that his dismissal denotes Plaintiffs' bad faith lacks merit.

### 2. Improper Joinder

Second, Altom's assertion regarding improper joinder confuses and conflates the standard at issue in the present case. Altom maintains that Plaintiffs improperly joined Schroeder. Altom then contends that Schroeder's improper joinder demonstrates that Plaintiffs acted in bad faith by naming him as a defendant in the present action. The doctrine of improper joinder, however, involves separate and distinct considerations from that of bad faith. The United States Court of Appeals for the Fifth Circuit has recognized that improper joinder evaluates what the plaintiff might prove in the future, while bad faith analyzes what motivated the plaintiff in the past. *Hoyt*, 927 F.3d at 293; *Policarpi-Datrindade v. Garrison Prop. & Cas. Ins. Co.*, No. 23-145-BAJ-EWD, 2024 WL 956557, at *6 (M.D. La. Feb. 16, 2024). Consequently, though a finding of improper joinder may, in some instances, provide evidence of bad faith, it is not dispositive of the issue. *See Hoyt*, 927 F.3d at 293; *Policarpi-Datrindade*, 2024 WL 956557, at *6.

Due to the unique way the pleadings evolved in the present case, Schroeder's alleged improper joinder in the First Amended Petition is of little relevance as to whether Plaintiffs acted in bad faith to prevent removal. An improper joinder analysis requires the court to analyze the pleading that was live at the time of removal. *Louis G. Orsatti, DDS, P.C. v. Allstate Ins. Co.*, No. 5-20-CV-00840-FB-RBF, 2020 WL 5948269, at *3 (W.D. Tex. Oct. 7, 2020); *Puente v. Tex. Roadhouse Holdings, L.L.C.*, No. 1:13–181, 2014 WL 12617817, at *4 (S.D. Tex. July 15, 2014). In the present case, however, the pleading that was live at the time of removal, the First Amended

Petition, is not representative or probative of the seriousness with which Plaintiffs have pursued their claims against Schroeder. As noted above, Plaintiffs' Original Petition (#2) contained specific factual allegations against Schroeder, and the allegations were scaled down only after Plaintiffs obtained a default judgment against Schroeder on the issue of liability. Therefore, the mere fact that Plaintiffs opted to reduce the complexity of its allegations against Schroeder after obtaining a default judgment against him as to liability does not in some manner indicate that Plaintiffs acted in bad faith by naming Schroeder initially as a defendant.

Furthermore, the standard employed in an improper joinder analysis has little bearing on Plaintiffs' bad faith because the standard did not govern when Plaintiffs filed their First Amended Petition in state court. An improper joinder analysis applies the federal pleading standard to evaluate whether the plaintiff has stated a claim against the allegedly improper defendant. *Palmquist*, 103 F.4th at 302. Nevertheless, the federal pleading standard did not control during the pendency of this proceeding in state court. Stated another way, the federal pleading standard did not govern during the period of time in which Plaintiffs' conduct is to be evaluated. Consequently, it would be unjust for the court to conclude that Plaintiffs acted in bad faith simply because their pleading failed to satisfy a standard that, at the time of filing, did not apply. As discussed above, Texas's fair notice standard governed when Plaintiffs filed their First Amended Petition, and the petition satisfies the fair notice requirement. Therefore, Plaintiffs' alleged failure to comply with the federal pleading standard is not pertinent to whether Plaintiffs joined Schroeder in bad faith.

### 3. Non-Prosecution of Schroeder

Altom lastly highlights Plaintiffs' conduct during the pendency of the present case, which allegedly demonstrates that Plaintiffs joined Schroeder in bad faith to prevent removal. First, Altom asserts that Plaintiffs have not explained why they amended their pleadings to eliminate the factually specific statements of Schroeder's negligence. As a result, Altom maintains the removal of Plaintiffs' specific allegations demonstrates that Plaintiffs never intended to pursue their claims against Schroeder. Altom's contention, however, improperly places the burden on Plaintiffs. Plaintiffs do not bear the burden of showing the *absence* of bad faith, but rather, Altom must demonstrate the *existence* of bad faith. *Holman*, 2024 WL 2001574, at *3. Moreover, as the court noted above, Plaintiffs arguably took this action because they did not deem it necessary to re-allege their claims against Schroeder in their entirety given that they had already obtained a default judgment on the issue of liability. Therefore, the court finds Altom's first contention unpersuasive.

Second, Altom avers that Plaintiffs' decision to wait six months before filing their motion for default judgment indicates that they did not intend, in earnest, to pursue Schroeder as a defendant. Plaintiffs maintain that they delayed seeking a default judgment because they were engaged in settlement negotiations with Progressive, Schroeder's insurance carrier. Altom, however, states that Plaintiffs had already been compensated for the loss they were allegedly attempting to settle and Progressive's records demonstrate that Progressive had attempted to reach Plaintiffs multiple times to no avail. As evidence, Altom cites Exhibit 10 to their Response (#10), containing multiple contact requests by Progressive sent to Plaintiffs before they filed the present lawsuit.

Altom's position, however, is contradicted by its own evidence. The exhibit Altom cites also reflects an email from Progressive acknowledging receipt of Plaintiffs' demand on April 19, 2024, and offering to settle the claim. Additionally, Exhibit 10 contains an ongoing conversation between Progressive and Amica, Plaintiffs' insurance carrier, regarding the settlement of Plaintiffs' claim.[4] On May 1, 2024, a mere 12 days after receiving Progressive's offer, Plaintiffs sent a copy of the lawsuit to Progressive indicating that Schroeder was in default. Progressive responded the following day, stating that it would not be hiring defense counsel at that time. Therefore, Plaintiffs moved for default judgment on May 16, 2024.

As a result, the evidence demonstrates that Plaintiffs acted rather diligently in pursuing their claims against Schroeder. Specifically, the evidence suggests that Plaintiffs, acting via their insurance company, received an offer from Progressive that they deemed insufficient. Shortly after receiving the offer, Plaintiffs filed for default judgment. It is unclear whether an explicit rejection of the offer was ever communicated. Nevertheless, that does not diminish the fact that the evidence, the timing, and Plaintiffs' explanation intimate that Plaintiffs intended to prosecute their claims against Schroeder. Therefore, Plaintiffs' alleged delay in seeking a default judgment is not indicative of bad faith.

---

[4] Altom avers that the conversation between Amica and Progressive did not pertain to the settlement of Plaintiffs' claims against Schroeder, as Plaintiffs had already been compensated for the losses that were the subject of the alleged settlement discussions. Altom is correct that Plaintiffs were compensated, but they were compensated by their own insurance carrier. Amica's payment to Plaintiffs, however, did not extinguish Plaintiffs' claims against Schroeder. Rather, Plaintiffs' claims remain viable, and Amica simply has a right of subrogation as to those claims. Furthermore, as the carrier of Schroeder's automobile insurance, Progressive faced liability for Schroeder's role in the collision. Therefore, it can be inferred that Amica and Progressive's discussions were conducted at least in part for the purpose of settling Plaintiffs' claims against Schroeder.

Finally, Altom maintains that Plaintiffs' failure to depose or otherwise engage in discovery with Schroeder substantiates its claim of bad faith. Plaintiffs, however, note in their Motion to Remand (#7) that they chose not to engage in discovery or depose Schroeder because there was no need. Plaintiffs maintain that, having obtained a default judgment, discovery from Schroeder was unnecessary. Altom did not respond directly to Plaintiffs' assertion. Rather, Altom's Response simply states that Plaintiffs' failure to engage in discovery with Schroeder demonstrates that they joined Schroeder in bad faith. Altom, however, does not identify the matters about which Plaintiffs should have sought discovery from Schroeder. In any event, Plaintiffs' decision not to engage in discovery with a defendant who has failed to answer or appear in court does not provide clear and convincing evidence of bad faith. Because Altom does not refute Plaintiffs' explanation for foregoing discovery with Schroeder, the court cannot conclude that Plaintiffs' actions establish bad faith.

Altom has failed to meet its heavy burden under § 1446(c)(1). Altom has not established by clear and convincing evidence that Plaintiffs acted in bad faith or maliciously manipulated the statutory rules to prevent removal. Rather, it appears Altom, in its desire to remove the case, has attempted to formulate an explanation after the fact to justify maintaining the action in its preferred forum. Moreover, the record indicates that Plaintiffs properly joined Schroeder due to his apparent role as the catalyst of the underlying collision. Plaintiffs pursued their claims by attempting to negotiate, and, when that failed, by obtaining a default judgment. Therefore, the court cannot say that Plaintiffs acted in bad faith.

The court concludes that, because Altom has not shown that Plaintiffs acted in bad faith, the exception to the one-year time bar is inapplicable in this case. Therefore, the present action was improvidently removed under 28 U.S.C. § 1446(c)(1), and it must be remanded to state court.

III.    Conclusion

For the foregoing reasons, Plaintiffs' Emergency Motion to Remand (#7) is GRANTED. This action shall be remanded to the 136th Judicial District Court of Jefferson County, Texas. All pending motions are denied as moot.

SIGNED at Beaumont, Texas, this 10th day of April, 2025.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE